# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**In re: Troy Alan and Heather Jo Blanchard**

                                                            Bankr. Case No. 14-20258-SVK
                                                            Adv. No. 14-2292-SVK

---

**LARRY H. LIEBZEIT, Trustee in Bankruptcy,**

        Appellant,

        -vs-                                                Case No. 14-C-1527

**INTERCITY STATE BANK, FSB,
BENJAMIN R. HOFFMAN,
DEBRA R. HOFFMAN,**

        Appellees.

---

## DECISION AND ORDER

---

The genesis of this bankruptcy appeal is a rather crude real estate transaction. In 2010, the debtors, Troy Alan and Heather Jo Blanchard, entered into a land contract with Benjamin and Debra Hoffman. The Hoffmans paid $30,000 down up front, and the contract provided that the debtors would obtain a mortgage on the property. The Hoffmans also agreed to pay $500/month to rent the property. The land contract was not recorded.

The debtors went to Intercity State Bank for financing. According to Michelle Knopf, the Bank's Vice President, at "some point, Mr. Blanchard

must have mentioned that they sold the Property on a land contract because I included a comment that 'This property is sold on a land contract that will be paid off by 8/31/2015.'" Bankr. Docket No. 21, Knopf Affidavit, ¶ 8. Based on her 20 years of banking experience, Ms. Knopf "would have dismissed this statement as a confusion of terms since all of the documents clearly supported the conclusion that [the] Blanchards and [the] Hoffmans had a rental agreement." *Id.* at ¶ 19. The mortgage and an assignment of leases and rents were both recorded on April 21, 2011.

The debtors filed for bankruptcy on January 10, 2014. On June 5, 2014, the trustee in bankruptcy, Larry H. Liebzeit, filed an adversary proceeding against the Bank. On cross-motions for summary judgment, the bankruptcy court denied the trustee's motion to declare the Bank's mortgage null and void and determined that the Bank's mortgage attached to the debtors' right to receive the land contract payments. The trustee appeals.

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). The bankruptcy court's decision is subject to *de novo* review. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004).[1]

---

[1] The Court takes note of the Bank's argument that the bankruptcy court erred in finding that it had constructive knowledge of the land contract. Thus according to the Bank, the bankruptcy court's decision should be modified to reflect that the Bank

The filing of a bankruptcy petition creates an estate that consists of "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts look to state law to determine whether a debtor has any legal or equitable interest in property at the time a bankruptcy is commenced. *In re Prochnow*, 474 B.R. 607, 613 (Bankr. C.D. Ill. 2011) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

The legal interest at issue is the debtors' right to receive payments from the Hoffmans pursuant to the land contract. "Upon the execution of a land contract, the vendee acquires equitable title to the property while the vendor *retains the legal title as security for the unpaid balance*." *Republic Bank of Chi. v. Lichosyt*, 736 N.W.2d 153, 159 (Wis. Ct. App. 2007) (citing *Steiner v. Wis. Am. Mut. Ins. Co.*, 697 N.W.2d 452 (Wis. 2005)) (emphasis added). As stated by Ms. Knopf, if the Bank had known about the land contract, it would have required the debtors to sign an Assignment of Land Contract in addition to the Assignment of Leases. Bankr. Docket Number 11, Bank's Proposed Findings of Fact, ¶ 21; *see Cmty. Nat'l Bank v. O'Neill*, 463 N.W.2d 880 (Table), 1990 WL 198035, at *2 (Wis. Ct. App. 1990) ("Thus, since a real estate mortgage conveys only real interest as opposed

---

remains a secured creditor of the property superior to the Hoffmans. However, the Bank failed to file an appeal (or cross-appeal) on this issue. Therefore, the Court will disregard the Bank's argument. *In re Neal*, 177 B.R. 892, 893 n.2 (N.D. Ind. 1994) (refusing to address appellee's argument in the absence of a cross-appeal for lack of jurisdiction, citing Bankruptcy Rule 8002).

to personalty, the mortgage could not, as a matter of law, ever convey a vendor's interest").

As the trustee argues, what the bankruptcy court essentially did was reform the mortgage to include a lien on personalty. While the bankruptcy court did not formally address the propriety of reformation, the Court agrees that the mortgage should be reformed.

"Reformation of a written instrument is appropriate when the instrument fails to express the intent of the parties, either because of the mutual mistake of the parties, or because of the mistake of one party coupled with fraud or inequitable conduct of the other." *Henning v. Ahearn*, 601 N.W.2d 14, 26 (Wis. Ct. App. 1999). In attempting to obtain financing from the Bank, the debtors were either mistaken about, or trying to conceal the true nature of, their land contract arrangement with the Hoffmans. The Bank, of course, would not have executed a real estate mortgage without the property as collateral (or an assignment of the debtors' rights as land contract vendors, *see Lychosyt*, 736 N.W. 2d at 159, explaining that when a "land contract vendee defaults under the terms of the contract, the vendor can select from a number of remedies: sue for the unpaid purchase price; sue for specific performance in which case the property is sold at a judicial sale; declare the contract at an end and bring a quiet title action to

clarify the parties' rights; or bring an action for strict foreclosure.")

The trustee argues that reformation is inappropriate because the Bank was at fault for not discovering or understanding that the debtors had sold the property to the Hoffmans on a land contract. In an unpublished decision cited by the trustee, the Wisconsin Court of Appeals refused to reform a mortgage because the bank was at fault for "not properly obtain[ing] the rights to the vendor's interest …" *O'Neill*, 1990 WL 198035, at *3 (citing *Warden v. Bd. of Supervisors of Fond du Lac Cnty.*, 14 Wis. 618, 621 (1861) ("the party applying [for equitable relief] must show that he is in danger of unjustly losing a substantial right, and that he is in no fault")). However, under the Restatement (Second) of Contracts, a "mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation …, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." § 157. This latter standard will guide the Court's analysis. *Id.*, cmt. a ("The mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude either avoidance or reformation. Indeed, since a party can often avoid a mistake by the exercise of such care, the availability of relief would be severely circumscribed if he were to be barred by his

negligence").[2]

The Bank acted in good faith when it reviewed the debtors' loan application. Ms. Knopf ordered a title commitment which, of course, did not reveal the unrecorded land contract. The appraisal indicated that the Hoffmans were tenants, not land contract vendees. Ultimately, all of the documents that Ms. Knopf received from the debtors and "reviewed in connection with loaning money to [the debtors] to refinance the Property … support the conclusion that [the debtors] and Hoffmans entered into a rental agreement, nothing more." Knopf Aff. at ¶ 12. Ms. Knopf could have done more, and perhaps she should have done more given the debtors' disclosure of the land contract. However, Ms. Knopf utilized her 20 years of banking experience to determine that the debtors were confused about their arrangement with the Hoffmans. This was consistent with reasonable standards of fair dealing in the residential loan industry. Therefore, because the mortgage should be reformed to include a lien on personalty, the land contract proceeds are not part of the estate pursuant to Section 541.

The trustee also seeks relief under the so-called "strong-arm"

---

[2] Wisconsin courts follow the Restatement (Second) of Contracts. *See State Bank of La Crosse v. Elsen*, 383 N.W.2d 916, 920 (Wis. Ct. App. 1986) (discussing Section 157); *see also Vandenberg v. Cont'l Ins. Co.*, 628 N.W.2d 876, 889 n.35 (Wis. 2001) (Section 155).

provision of the bankruptcy code. 11 U.S.C. § 544(a). The purpose of Section 544(a) is to allow the trustee to marshal or increase the potential assets of the debtor's estate. *In re JII Liquidating, Inc.*, 341 B.R. 256, 273-74 (Bankr. N.D. Ill. 2006). For example, Section 544(a)(1) gives the trustee the rights and powers of a creditor that "extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists." In other words, the trustee acquires the status of a hypothetical judicial lien creditor and may avoid any lien or encumbrance on the debtor's property that such creditor could avoid under state law. *In re Church*, 206 B.R. 180, 183 (Bankr. S.D. Ill. 1997). The trustee's rights are "those which state law would allow to a hypothetical creditor of the debtor who, as of the commencement of the case, has taken the necessary steps to perfect a lien on the debtor's property." *Id.*

As the Court has already determined, the Bank has a legal interest in the land contract proceeds pursuant to the equitable remedy of reformation. The Bank's right to reformation is "subject to the rights of good faith purchasers of value and other third parties who have similarly relied on the finality of a consensual transaction in which they have

acquired an interest in property. Such other parties include those who have given value and come within the definition of 'purchaser' in [the Uniform Commercial Code], notably mortgagees, pledgees and other holders of a security interest. *Judgment creditors and trustees in bankruptcy are not included.*" Restatement (Second) of Contracts § 155, cmt. f (emphasis added). Therefore, the trustee's status as a hypothetical judicial lien holder pursuant to Section 544(a)(1) cannot trump the Bank's right to equitable reformation.

Finally, Section 544(a)(3) allows the trustee to "avoid any lien or transfer avoidable by a hypothetical bona fide purchaser of real property of the debtor as of the date of the commencement of the case." *In re O'Connor*, 432 B.R. 175, 178 (Bankr. W.D. Penn. 2010) (quoting 5 *Collier on Bankruptcy*, ¶ 544.02[1]). Put another way, this provision gives the trustee "enhanced powers over real property owned by the debtor at the commencement of the case and *not* transferred." *In re Seaway Exp. Corp.*, 912 F.2d 1125, 1128 (9th Cir. 1990) (emphasis in original). The interest at issue in this case is personalty, not realty. Moreover, when the debtors filed for bankruptcy, they obviously did not own the property that they had previously sold to the Hoffmans. *In re Biggs*, 377 F.3d 515, 517 (6th Cir. 2004) (under Section 544(a)(3), the trustee "hypothetically purchases *the*

*debtor's property* at the commencement of the bankruptcy case, then determines whether it is subject to any valid prior interests") (emphasis added). Therefore, the Court does not understand how Section 544(a)(3) can help the trustee. It is inapplicable to the situation at bar.

***

The decision of the bankruptcy court is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of April, 2015.

**SO ORDERED:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**